## ATLANTA RAPID TRANSIT COMPANY *v.* YOUNG.

On an application for a new trial on the ground of newly discovered evidence the movant must exclude any idea of laches, and show affirmatively that by the exercise of ordinary diligence the newly discovered evidence could not have been procured in time for use on the trial.

Simmons, C. J., dissenting. Ordinary diligence is all that is required, by the code, of a movant for a new trial in the ascertainment of "newly discovered" evidence. The opinion of the majority of the court requires extraordinary diligence. Under the facts disclosed by the record, the movant showed ordinary diligence. The newly discovered evidence would certainly change the result and prevent a robbery under the forms of law, and the trial judge should have granted a new trial.

Argued January 14, — Decided March 13, 1903.

Action for damages. Before Judge Reid. City court of Atlanta. February 1, 1902.

The suit was on account of personal injuries alleged to have been suffered by the plaintiff's wife, Annie Young, from the negligence of the defendant's servants, in suddenly starting a street-car that she was in the act of entering, whereby she was thrown upon the street.    The plaintiff obtained a verdict for $300.    A motion for a new trial (on the general grounds, and because of newly discovered evidence) was overruled, and the defendant excepted. The injuries were alleged to have been inflicted on September 8, 1900.    The declaration was filed on October 2, 1900, and served on the next day.    The trial began (according to a recital opposite the title of the case at the head of the brief of evidence) on October 10, 1901.  The verdict was rendered on October 14, 1901.  The testimony of Annie Young, Annie Brown, and Pinkey Thomson showed that on September 8, 1900, between 12 and 1 o'clock in the day, the first two signaled a car to stop at the corner of Bartow and Luckie streets.    The third was a passenger on the car. As it stopped two men came up and entered the car ahead of the women, and about the same time "a white lady" came from a house at the corner and handed the conductor of the car a note. He was at the rear end of the car, and in receiving the note he turned his back to the women who were about to get on the car. Annie Young had put her right foot on the step and had taken hold of the hand-rail (having a bundle on her left arm) when the conductor looked at the note and pulled the bell-cord.    The car moved off, and Annie Young was "snatched up" and thrown back on the pavement.    The car did not stop; the conductor made some remark to the motorman, looked back toward where the two women had been left, and laughed.    Witnesses for the defendant testified that they were the conductor and motorman of the car at the time and place before mentioned; that they did not see Annie Young; that no one was hurt, nor was a note brought, nor did either of them receive any information that anybody had been injured by the car on that day; and that no accident occurred. The conductor did not remember laughing at any one that day. There was conflict of testimony as to whether Annie Young was seriously hurt, if at all.

On cross-examination of Annie Young she testified that in the forenoon of September 8, 1900, she had visited the stores of Warnock, where she was weighed on scales by one of his clerks, and of

Abbott, where she paid one dollar on account. Part of the alleged newly discovered evidence goes to contradict these statements, and to show that Annie Young was at Warnock's store on both the 8th and the 22d of September, 1900, and borrowed money from him on both days; and that she was in Abbott's store on the 10th of September, and paid two dollars then. The other part is contained in the affidavits of Mrs. Hall Gregory and Miss Fay Lester (sisters) viz.: On September 8, 1900, deponents resided with their father in a house at the corner of Luckie and Bartow streets. That is their home. They were sitting on the front verandah of the house about noon on the day named. Two colored women came along Bartow street from towards Marietta street, and stopped at the corner. One sat upon the curbstone, the other on a water-plug. They were laughing and talking loudly and boisterously. Within the last three or four days deponents have been witnesses in court in the case of Annie Young *v.* Atlanta Rapid Transit Company, and recognized her as one of the two negro women who came to the street corner as before related ; and Annie Young pointed out deponent as being present on the verandah at that time. While these two negro women were at the street corner the car came, they signaled it, and it stopped still and remained still long enough for both of them to have got on it. They said to the conductor something that deponents did not hear, and he went then and rang the bell, and the car started. After it started, Annie Young grabbed it and tried to get on, and fell. Both of the negro women tried to get on at the same time. The car was running at the time. Annie Young was not hurt. Deponents went down the steps and asked her if she was hurt, and she said no. Neither of deponents carried any note to the conductor. The two negro women walked up the street a little way, then returned, and asked deponents if they knew the name of the conductor or the number of the car. Annie Young walked back across the street, holding her wrist, and would change from one wrist to the other. Her fall was not hard enough to have hurt any one at all. Deponents saw no one else get on the car. Both sides of the car were clearly visible, and there was no obstruction to the view from the verandah, and deponents at the time were looking at said plaintiff and the other negro woman and at said car. Deponents did not know that a case had been brought against the defendant until about a week ago (the affida-

vits are dated October 30, 1901), and, so far as they know, none of the agents or employees of the defendant knew that they knew anything about the alleged accident.

It is unnecessary to report further the showing as to the newly discovered evidence, beyond what appears in the opinions.

*Rosser & Brandon* and *Simmons & Pettigrew*, for plaintiff in error.    *Felder & Rountree*, contra.

LAMAR, J.   The only question argued before us was the error of the judge in refusing a motion for a new trial because of newly discovered evidence.   It appeared that the trial of an action for personal injuries in the city court of Atlanta lasted for four days, and that on the first day of that trial the plaintiff testified that the injury occurred at the intersection of two streets in the city, and was witnessed by certain persons who were seated on the front porch of one of the houses immediately in front of the place where the accident happened, — stating however that she did not know their names.   After the trial the defendant procured from these eye-witnesses affidavits as to facts which were not, strictly speak-. ing, impeaching, but new and independent facts material to the defendant's contention, and, while contradictory of facts testified to by the plaintiff, might possibly have changed the result.   In neither of these affidavits is it stated, nor does it appear elsewhere in the record, where the witnesses were during the four days of the trial.   The only allusion to their whereabouts is in an affidavit of an officer of the defendant, that the witnesses "were not in the State of Georgia at the time the said case was tried."   This statement on the part of the officer may have been true to the best of affiant's knowledge and belief, and yet that information may have been derived from hearsay.   In fact, as the officer appears to have been in Atlanta during the trial, it must have been hearsay; for no one in Atlanta was in position to know positively that the witnesses were at the same time out of the State.   But if the officer, of his own knowledge, actually knew where the witnesses were; if he himself was out of the State during the period of the trial, and therefore in a position to state positively that the witnesses were not in the State of Georgia it would then have been not only possible, but proper, for him to state where the witnesses were, in order that an issue could have been raised as to whether it was pos-

sible to have secured their attendance. They may have been in an adjoining State, on the line of a railroad, in reach of a telegram or long-distance telephone message; and while they could not have been compelled to attend, a request to that effect might have been complied with. In other words, by exercising ordinary diligence their attendance might have been secured; and if so, the trial, which is otherwise practically conceded to have been free from errors, would have been final and a new hearing obviated. Of course, if they had declined to come from a neighboring State on being requested so to do, their refusal would in no way have affected the question of diligence on the part of the movant; for it had done all it could do. If the officer knew where the witnesses were, it ought to have been shown why no attempt was made to have them present. The whereabouts of the witnesses at the time of the trial may shed light on the question of diligence; but the real point was, not where they were, but could their attendance have been secured? Where the record fails to show that it was impracticable to communicate with them, or to have had them present in the exercise of ordinary diligence, the question as to laches is left open.

It was also contended, that, inasmuch as these witnesses lived in the house immediately opposite the place of the accident, and as the petition gave notice as to where the injury occurred, proper diligence required that inquiry should have been made in the neighborhood, with a view of discovering whether any person living there or near by had seen the occurrence. We do not lay down any rule on this subject; for it is a matter to be passed on in the first instance by the trial judge. It is for him to say, as a trior of the question of fact, whether diligence has been exercised; and where, as in this case, he seems to have found that, either before the trial or during the trial, the defendant had enough information to put it on inquiry as to the possibility of securing the testimony of these two witnesses, and where he finds that the showing of proper diligence has not been made, his ruling will not be interfered with by this court. Civil Code, §§ 5480, 5481.

There was also newly discovered evidence of other witnesses; but their testimony, we think, was impeaching in its nature.

*Judgment affirmed. By four Justices.*

SIMMONS, C. J., dissenting. I am of opinion that the judge below erred in not granting a new trial because of the "newly dis-

covered" evidence.   Counsel for the defendant in error contended
that the movant in the motion for new trial did not show sufficient.
diligence in finding this evidence.   The showing as to diligence
was full and explicit, but counsel argued that it was contradicted
by facts appearing in the record which showed that the evidence
should have been secured while the trial was in progress.   A part
of this argument was based on the statement that the trial of the
case in the lower court took four days, and that the evidence ad-
duced on the first day of the trial put the defendant company on
notice of this evidence, the plaintiff's wife testifying on that day
that her fall was witnessed by two ladies sitting on the front porch
of a certain house.   This statement is not sustained by the record.
In the first place, the record does not show that the trial of the
case occupied more than a day.   At the beginning of the brief of
evidence is a statement that the trial began on a certain day (four
days, excluding Sunday, prior to the date of the verdict), and in
the body of the brief of evidence is a parenthetical statement that.
the case was adjourned to the next day; but such statements are
in no sense part of the evidence and should find no place in the
brief thereof, and their correctness is not verified by the judge's
approval of the paper as a true and correct brief of the evidence in
the case.   Again, the evidence of the plaintiff's wife, as it appears
in the record, shows that just before she was hurt a lady handed a.
note to the conductor of the street-car.   Nothing more appears in
her testimony that could have put the company on notice of the
evidence which it has since secured.   Another witness, whose tes-
timony appears below the statement that the court adjourned to
the next day, testified that the conductor was handed a note by
"a white lady" who "came from a house on the far corner, the
right-hand corner of Luckie street."   She lived there, because wit-
ness "was there to see her after the accident happened."   The two
ladies whose testimony the company wishes an opportunity to place
before a jury state, in their affidavits, that they were seated on the
front porch of a house on the corner, and from that place witnessed
the injury to the plaintiff's wife.   Neither of them gave any note
or other article to the conductor, and neither of them left the front
porch until after the injury.   It is, therefore, not clear that one of
these ladies is the person referred to in the record as having come
from the house and handed the conductor a note.   However this.

may be, I think the record does not show that the evidence adduced on the trial gave the company's counsel or officers any such notice as would have made it incumbent on them, in the exercise of ordinary care, to find these witnesses and have them present before the conclusion of the trial.

Even stronger than this is the movant's showing that all efforts, even the most earnest and diligent, to secure these witnesses could have been of no avail. Such efforts would have proved unproductive, for the reason that these witnesses were, at the time of the trial, not in this State. Nor did the evidence relied upon as notice to the company give any notice as to what were their names. Had they been found in a near-by State and been willing to come immediately to Atlanta, still the record, as we have seen, fails to show that the trial lasted a sufficient length of time to enable the company to secure their evidence. One of the affidavits attached to the motion for new trial contains an unqualified statement that these witnesses " were not in the State of Georgia at the time said case was tried." The sources of the affiant's knowledge do not appear. He does not make the averment as upon information and belief, but as based upon positive knowledge. Whether he had knowledge of the facts sworn to this court can not know; but the facts are such as could be known positively, and there is nothing in the record to authorize a conclusion that the affiant's sworn statement to them as of his own knowledge had nothing behind it but information derived from others by hearsay. Whether the affiant was in Atlanta during the trial of the case does not appear from the record. He states in his affidavit that he " has had exclusive control of the trial of the . . case *so far as" his firm is concerned*; but it appears that there was another firm also representing the company, and the record does not indicate that this affiant was present at the actual trial of the case. At any rate the affidavit contains a positive statement as to the whereabouts of the witnesses, and this statement should be treated as stating the truth, as I have no doubt it does. So treating it, the conclusion is irresistible that the motion for new trial should not have been denied because of any lack of diligence on the part of the movant. It is assuredly no lack of diligence to fail to secure evidence of the materiality and existence of which the party has no notice until after the trial has actually begun, when the witnesses who must be relied

upon are at that time in another State and their names unknown to the parties. A party should not be prejudiced by a failure to make an effort which must have been fruitless.

It was also suggested that the defendant company should have had inquiry made at the houses in the neighborhood, to ascertain if any of the residents knew anything of the occurrence to be investigated. Whether the evidence of the witnesses above referred to *could* have been thus secured does not appear; nor whether they were in Georgia; nor whether any one else in the house had been informed of what they had seen. But conceding that the course suggested would have resulted in the discovery of this evidence, the duty of exercising ordinary care to discover evidence did not carry with it the duty of making such a house-to-house canvass. Indeed, to my mind, the sufficiency of the showing of the movant is clear when due regard is had to the standard of diligence imposed in such cases by the code. This standard is that of ordinary diligence, while to sustain the contentions of the defendant in error and affirm the judgment below is to hold the party bound to exercise extraordinary diligence. The materiality and force of the newly discovered evidence can not be disputed. If it is true, then the trial which has been had resulted in a grave miscarriage of justice. The verdict finds the defendant company liable in damages for an injury for which, under this evidence, it was in no way responsible, and the plaintiff is awarded a considerable sum of money when the finding, if the facts had been known, should have been against him.